Oregon Land and Livestock Company v. Commissioner.
Oregon Land & Livestock Co. v. Commissioner
Docket No. 110798.
United States Tax Court
1943 Tax Ct. Memo LEXIS 35; 2 T.C.M. (CCH) 1085; T.C.M. (RIA) 43504; December 10, 1943
*35 C. E. McCulloch, Esq., and Thomas B. Stoel, Esq., 1410 Yeon Bldg., Portland, Ore., for the petitioner. T. M. Mather, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined deficiencies for the year 1939 as follows: $28,789.51 in income tax; $14,157.04 in declared value excess profits tax; and $28,048.83 in personal holding company surtax. Respondent added to the personal holding company surtax the sum of $7,012.21, 25 percent of the amount of the surtax, because petitioner failed to file a personal holding company return within the time prescribed by law in accordance with section 3612 (d) (1) of the Internal Revenue Code. The main question is whether or not a distribution to petitioner in 1939 of all of the assets of the Bly Timber Company, a holding company, a subsidiary, came within the provisions of section 112 (b) (6) of the Internal Revenue Code, so that the gain to petitioner was not taxable. Petitioner filed its income tax return for the year 1939 with the collector for the district of Oregon. Findings of Fact Petitioner was organized in 1902 under the laws of Oregon. Its office is in Eugene, Oregon. Its business *36 is the purchase and sale of timberlands in Oregon. It does not carry on logging operations on its lands. During 1938 and 1939 petitioner's president was R. A. Booth. In 1928 petitioner owned a tract of pine timberlands near Lakeview, Oregon. Weyerhaeuser Timber Company, hereinafter called W, owned a tract of pine timberland which was adjacent to and intermingled with petitioner's tract. W was an operating company and it carried on logging operations on its own properties. Ewauna Box Company was interested in purchasing both tracts. To facilitate a proposed sale, a new corporation was organized on June 28, 1929, which was called Bly Timber Company. Petitioner, hereinafter called Oregon, and W transferred their respective tracts of timber to Bly in exchange for all of Bly's stock. Shortly thereafter Bly sold all the timberlands to Ewauna. The contract price was to be paid as timber was cut. Also, Ewauna issued a block of its preferred stock as part payment. The contract covered both land and timber. The total contract price was $2,780,000. R. A. Booth was president and manager of Bly. There were 5 directors of Bly, 3 being representatives of Oregon and 2 being representatives of W. *37 In 1938 the outstanding capital stock of Bly consisted of 410,283 shares, having a par value of $1 per share, of which Oregon owned 230,127 shares, or 56.1 percent, and W owned 180,156 shares, or 43.9 percent, said interests in Bly's capital stock having been determined by the relative values of the properties contributed by Oregon and W. From 1931 to 1937, Ewauna had difficulty in complying with the provisions of the 1929 contract with Bly, and during this period Bly made various concessions to enable Ewauna to continue operations under the contract. As a result of giving these concessions, Bly sustained losses but such losses were not deductible for income tax purposes. Ewauna's financial condition was extremely precarious and it was essential that the Ewauna contract should be revised or some other arrangements made. The concessions were made as a result of the policy which was favored by Oregon, the majority stockholder of Bly. W was not in accord with Oregon's policies and as early as 1936 suggested that Bly should be dissolved. W was in a position to carry on its own logging operations if it took its property back. H. E. Nowell, chief accounting adviser of Oregon and Bly, *38 pointed out reasons why Bly could not be dissolved at that time. Early in 1937 a new cruise was made of the timber. Following that there was much discussion about what should be done with the Ewauna contract. Ewauna wanted a new contract with less burdensome provisions. W was extremely critical of Ewauna's performance. In December of 1937, W refused to agree to a proposed revision of the contract. W showed an irreconcilable attitude and proposed that it should withdraw certain timberlands under a partial liquidation of Bly. That suggestion led to a consideration of a complete liquidation of Bly at that time. At a meeting of Bly's directors held on January 13, 1938, the matter of dissolving Bly and dividing its properties was discussed, and the officers of Bly were authorized to present a plan of dissolution. At first the directors of Oregon expressed their approval of dissolving Bly in the minutes of a meeting held on January 26, 1938, and the stockholders adopted a resolution at a meeting on the same day authorizing the officers of Oregon to submit a plan of dissolution of Bly. Later a notice was sent out calling for a meeting of Bly's stockholders on February 24, 1938, for the *39 purpose of discussing the advisability of complete liquidation. Prior to the formal stockholders' meeting, there was an informal meeting in Eugene, Oregon, on February 18, 1938, at which all of the capital stock of Bly was represented and the attorneys, accountants, and advisers of the stockholders were present. That meeting lasted an entire day. At this meeting Nowell presented a plan for the liquidation of Bly which involved repossessing the properties under the Ewauna contract. His plan was rejected overwhelmingly by the officers of Oregon and Bly, and he withdrew his plan. Up to that time Nowell had never given thought to a partial liquidation plan, but at this meeting he did so with D. V. Kuykendall, attorney for Oregon and Bly, and J. S. Obenour, chief accountant adviser of W, and they developed a plan which was approved by everyone at the meeting on February 18th. The plan was for the repossession by Bly of the timberlands from Ewauna upon cancellation of the Ewauna contract and release by Ewauna of the property; for Bly's distribution to W of 43.9 percent of said property in exchange for the stock held by W, in partial liquidation of Bly; and for Bly's entering into a new *40 contract with Ewauna of sale of the remaining timber, alone. In the written plan it was provided that "It is contemplated that with these proceedings that Bly Timber Company will remain in existence as far as can now be seen and possibly may not be liquidated except by the completion of the cutting of its timber." At the special meeting of Bly's stockholders on February 18th, there was an agreement reached on the matter of the division of the timberlands between Bly and W, which Bly was to receive back from Ewauna. W was to receive back a tract of the land which had not been logged which probably contained some of the original land contributed by W, but the division of the land was not to effect a return to W of the original land contributed by W because some of the original tract had been logged. The only purpose of the partial liquidation was to enable W to step out and take back its property. When the formal meeting of the stockholders of Bly was held on February 24, 1938, which was after the informal meeting had been held on February 18th, the chairman reported that the informal meeting had been held and what decisions had been made. This was a formal report. It was unanimously *41 agreed that the purpose for which the meeting had been called, namely, to discuss the complete liquidation of Bly, would be abandoned. Early in March a special meeting of Bly's directors and stockholders was called, to be held on March 22nd. The purposes were to consider cancellation of the Ewauna contract, liquidation of the stock held by W in exchange for Bly's transfer to W of certain timberlands, in partial liquidation of Bly, reduction of the authorized capital stock of Bly from 410,283 shares to 230,127 shares, amendment of the articles of incorporation to effect such reduction, and amendment of the by-laws to reduce the number of directors of Bly. The meeting of the directors was held on March 22, 1938. The directors approved and authorized the cancellation, as of January 1, 1938, of the Ewauna contract, to which Ewauna had agreed. They also approved and authorized the acceptance of W's written proposal to surrender its stock for cancellation, in partial liquidation, and they adopted a resolution to declare a liquidating dividend in redemption and cancellation of 180,156 shares of stock, to be paid in kind by conveyance by quit claim deed to W of certain timberlands, fully *42 described. The meeting of the stockholders was held on March 22nd. The stockholders ratified the above actions of the directors, approved and adopted the plan for the partial liquidation of the Bly stock, and authorized the directors and officers to declare the liquidating dividend in kind. They also adopted resolutions to amend the articles to provide that the capital stock of Bly should consist of 230,127 shares. They voted to amend the by-laws to provide that the board of directors of Bly should be reduced to 3 members. All the arrangements were carried out. A certificate of decrease of capital stock was issued by the State of Oregon on March 28, 1938; Bly received deeds of the timberlands from Ewauna and gave deeds of part to W; W surrendered its stock; proper book entries were made. The partial liquidation of Bly was carried out. Under date of March 29, 1938, a new contract was executed by Bly and Ewauna which was authorized by Bly's directors at a special meeting on March 30. This contract differed materially from the earlier contract, chiefly in that Ewauna purchased only timber, and it was not required to make fixed interest payments, a matter which had been a disputed *43 point when earlier discussions had taken place. During the remainder of 1938 Ewauna cut about $60,000 of timber. In April and May of 1939, R. A. Booth inquired of Nowell and Kuykendall whether Bly could be dissolved completely. In February 1938, Booth had agreed to continuing the corporate existence of Bly. But in 1939 he expressed the view that it was troublesome to him to look after the details of a separate holding company. Booth was 86 years old and he found it troublesome to look after the bookkeeping, records, and extra reports of Bly. He gave much time personally to these matters. Both advisers said they did not know of any objection at that time to dissolving Bly. Ewauna was in an improved financial condition, and it was in a better position to carry out the new contract. Also, the matter of Bly's income tax liability for 1935 and 1936, which had come to a head in October 1938, had been settled in January 1939. On May 29, 1939, a duly called special meeting of the stockholders by Bly was held. A resolution was adopted to dissolve Bly and the directors were authorized to carry out a plan of complete liquidation. The plan was set forth in the minutes of the meeting as follows: *44 All of the assets of Bly were to be distributed immediately, pro rata, to the stockholders in complete redemption and cancellation of all of the outstanding stock. On the same day Bly's directors met and adopted resolutions to effect the dissolution of Bly and the distribution of all assets to petitioner by deeding to petitioner all of Bly's real property, by assigning to petitioner all of Bly's interest in the new Ewauna contract, and by transferring to petitioner the total cash on hand and any other assets. All of the transfers of Bly's assets were made to petitioner and Bly was dissolved in June 1939. The date of the adoption of a plan to completely liquidate Bly was May 29, 1939, and no plan of complete liquidation had been adopted before that date. Prior to May 29, 1939, there was no authorization of the distribution of all of Bly's assets in redemption of all of its stock. Opinion The question arises under section 112 (b) (6) [1] of the Internal Revenue Code, part of which is set forth below. Petitioner contends that it qualified under subsection A because it owned 100 percent of the capital stock of Bly "on the date of the adoption of the plan of liquidation", and that the *45 distribution in 1939 by Bly was pursuant to a "plan of liquidation" within the meaning of that clause in subsections (A) and (C), so that the distribution was tax free within the meaning of section 112 (b) (6). Petitioner contends that at the time of the partial liquidation on March 22, 1938, when certain property was distributed to W in redemption of its stock, the stockholders and directors of Bly had not adopted a plan of liquidation of that corporation. Petitioner points out that at the meetings of February 18, 1938, and February 24, 1938, a proposal for the complete liquidation of Bly was rejected and abandoned. Petitioner contends that it was not until May 1939 that the stockholders and directors of Bly adopted a plan of liquidation, and that considerations of completely liquidating Bly were, at that time, "new business". In short, it is petitioner's view that the distribution of Bly's assets in May 1939 to petitioner was in pursuance of a plan of liquidation first conceived and adopted in May 1939. *46 Respondent contends that Bly adopted a plan at some time in 1938 to liquidate in two steps, the first being the distribution to W in 1938, and the second being the distribution to petitioner in 1939, and under such view respondent argues that petitioner owned only 56.1 percent of Bly's stock at the time a plan of liquidation was adopted, so that petitioner is not a corporation qualified under subsection (A) of section 112 (b) (6) to receive the benefits of that section. Respondent contends, therefore, that the distribution in question comes within the provisions of section 115 (c) and petitioner is taxable on the gain. In determining the deficiency, respondent determined that petitioner realized a profit on the liquidation of Bly in the amount of $165,842.43, and that the entire amount of such gain was taxable under the provisions of section 115 (c). At the hearing, respondent stipulated that the amount of the realized gain was $151,743.70. Respondent relies upon certain statements in the annual reports of the president of petitioner and Bly. Respondent contends that such statements evidence a purpose of the management and stockholders of "petitioner" (sic), both before and *47 after the distribution to W in 1938, to continue the corporate existence of Bly only until and only for the purpose of making a new contract with Ewauna and settling the Federal income tax liability of Bly for 1935 and 1936. Respondent contends that the distribution to petitioner was one of a series of distributions by Bly in redemption of a portion of its stock within section 115 (i). Respondent argues, further, that a partial distribution, within section 115 (i), having been made by Bly in 1938 when petitioner was the owner of only 56.1 percent of Bly's stock will not result in a "complete liquidation", within the meaning of that clause in section 112 (b) (6), in 1939 when the liquidation was completed merely because petitioner, at that time, was the sole owner of all of Bly's then outstanding stock. The distribution of Bly's assets to petitioner comes within the provisions of section 112 (b) (6), subsections (A) and (C), unless the facts show that "the plan of liquidation" was not the plan adopted by Bly's stockholders on May 29, 1939. There was no plan of complete liquidation adopted by Bly's stockholders prior to that date. Respondent's view is that there was some intent, tantamount *48 to an agreement among Bly's stockholders, in March 1938, or just prior to the time W withdrew from Bly, to liquidate Bly in two steps, and that such intent should be held to have constituted the "adoption of the plan of liquidation", and that, if such is true, petitioner is not a corporation qualified to receive the benefits of section 112 (b) (6). The evidence does not support respondent's theory. All of the evidence must be considered. Respondent's contention is founded upon his interpretation of certain statements which appear in annual reports of R. A. Booth, president of Bly and of petitioner, dated December 31, 1938, and in the minutes of the annual meeting of Bly's stockholders on January 11, 1939. These statements were expressions of intent and are reflected by the following quotation from the annual report of Booth, as president of Bly, on December 31, 1938: It is our purpose to dissolve Bly Timber Co., after conveying its assets to Oregon Land & Livestock Co., when the Federal tax question is settled, unless some good reason is shown to influence this decision. It will simplify and lessen our work to consolidate as suggested. Such statements do not reflect the adoption *49 of a plan for the complete liquidation of Bly on a date prior to or on March 22, 1938. The evidence is that the stockholders of Bly agreed at the meetings held on February 18, 1938, and February 24, 1938, to abandon a proposed plan to completely liquidate Bly. The most that such statements show is that after March 22, 1938, Booth expressed a view that Bly should be liquidated completely "unless some good reason should be shown to influence this decision". Booth was active in the affairs of petitioner and Bly, but he was not the only interested director. His son and others, including Nowell and Kuykendall, exercised great influence upon the making of decisions. In view of a preponderance of evidence that a plan to completely liquidate Bly was abandoned in February of 1938, the statements which respondent relies upon cannot be given the weight he ascribes to them. There is the testimony of Nowell and Kuykendall that a plan to completely liquidate Bly was abandoned in February of 1938, and that "nobody thought any more about it", and certain documentary evidence shows the same. Nor is there any evidence that the adoption of the resolution in May 1939 to completely liquidate Bly supports *50 a conclusion that such resolution merely carried out an understanding arrived at prior to March 1938. Between the time of the abandonment of the idea in February 1938 and May 1939, conditions changed materially. The important change was the improvement in Ewauna's financial condition which was due to improvement in the lumber market which gave assurance that Ewauna could carry out its obligations under the new contract. Under new conditions, there was only the question of whether it was worth the work to continue the corporate existence of a then wholly owned holding company, Bly. Booth was irritated with the details, and Nowell and Kuykendall could not find any reason in the spring of 1939 for not dissolving Bly. Throughout, the interested parties were exercising sound business judgment. The partial liquidation of Bly in 1938 had a real business purpose and was motivated solely by W's desire to get out of Bly. The facts do not show or indicate any tax scheme to be scrutinized to eliminate the form to arrive at the substance. In 1938 W wanted to withdraw and it had no interest in what happened to Bly afterward. Petitioner was not equipped to carry on logging operations itself and *51 had to get someone to cut the timber on the land owned by Bly under contract. Ewauna was an acceptable contractor. Petitioner, in 1938, was satisfied to have Bly make a new contract and to let Bly continue as a holding company. In 1938, the lumber market was still depressed and it seemed preferable to have Bly make the contract. The asset value of the contract was then speculative. Section 112 (b) (6) was enacted to encourage and facilitate the liquidation of holding companies, and to that end Congress has permitted such liquidations to be tax free under the conditions set forth in the statute. See Seidman's Legislative History of Federal Income Tax Laws, pp. 240 to 243. The evidence here supports the conclusion that petitioner is qualified to receive the benefits of the statute and that the distribution to it of Bly's assets in 1939 was pursuant to a plan of complete liquidation which was first adopted in May 1939. It has been found that such is a fact. It is concluded that the adoption of the plan in May 1939 was separate and apart from the divorce of W from Bly in 1938. It is held that the distribution in question comes within section 112 (b) (6). It is, accordingly, unnecessary *52 to consider two other issues raised by the pleadings. Decision will be entered for the petitioner. Footnotes
1. SEC. 112 (b) (6): (6) Property received by corporation on complete liquidation of another. - No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. For the purposes of this paragraph a distribution shall be considered to be in complete liquidation only if - (A) the corporation receiving such property was, on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock (in such other corporation) possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and the owner of at least 80 per centum of the total number of shares of all other classes of stock (except non-voting stock which is limited and preferred as to dividends), and was at no time on or after the date of the adoption of the plan of liquidation and until the receipt of the property the owner of a greater percentage of any class of stock than the percentage of such class owned at the time of the receipt of the property; and * * * * *
(C) the distribution is by such other corporation in complete cancellation or redemption of all its stock, and the transfer of all the property occurs within the taxable year; in such case the adoption by the shareholders of the resolution under which is authorized the distribution of all the assets of such corporation in complete cancellation or redemption of all its stock, shall be considered an adoption of a plan of liquidation, even though no time for the completion of the transfer of the property is specified in such resolution; * * *↩